## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL RAUNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CORINDUS VASCULAR ROBOTICS, INC., MARK J. TOLAND, DAVID W. LONG, DOUGLAS TEANY, JEFFREY C. LIGHTCAP, JEFFREY G. GOLD, CAMPBELL D. ROGERS, M.D., JAMES R. TOBIN, LOUIS A CANNON, M.D., NATHAN R. HARRINGTON, and DOUGLAS L. BRAUNSTEIN.<br><br>Defendants. | Case No. 19-cv-9056<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Rauner ("Plaintiff"), through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Corindus Vascular Robotics, Inc. ("Corindus" or the "Company") (other than Defendants outlined below) against the Company and its Board of Directors (the "Board" or "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the proposed merger between Corindus and Siemens Medical Solutions USA, Inc. ("Siemens").

2.      On August 7, 2019, the Board approved the terms of and caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Corpus Merger, Inc., a wholly-owned subsidiary of Siemens ("Merger Sub"), will merge with and into

Corindus, with Corindus surviving as a wholly-owned subsidiary of Siemens (the "Proposed Transaction"). Under the terms of the Merger Agreement, Corindus common stockholders will have the right to receive $4.28 in cash for each share of common stock of Corindus ("Corindus Common Stock") that they own (the "Merger Consideration").[1]

3.       In order to convince Corindus' stockholders to vote in favor of the Proposed Transaction, on or about September 26, 2019, the Board authorized the filing of a materially incomplete and false and/or misleading Schedule 14-A Definitive Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), which contains, in violation of Sections 14(a) and 20(a) of the Exchange Act, incomplete and materially misleading information regarding (a) the financial projections for Corindus and (b) the inputs for the financial analyses performed by Citigroup Global Markets, Inc. ("Citi") to support its fairness opinion. As outlined in further detail below, the Proxy contains woefully inadequate disclosure regarding the assumptions and projections prepared and provided by management and the financial prospects of Corindus on a standalone basis.

4.       For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Corindus stockholders in advance of the special meeting of the Company's stockholders or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

---

[1]       Holders of Preferred Stock will receive $85.60 in cash for each share of Series A Convertible Preferred Stock and Series A-1 Preferred Stock that they own.

violations of Section 14(a) and 20(a) of the Exchange Act.

6.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. More specifically, Corindus' common stock is listed and traded on the NYSE, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

8.    Plaintiff is, and at all relevant times has been, a Corindus shareholder.

9.    Defendant Corindus is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 309 Waverley Oaks Road, Suite 105, Waltham, Massachusetts 02452.

10.    Defendant Mark J. Toland ("Toland") is, and has been at all relevant times, the Company's President and Chief Executive Officer and a member of the Board since March 2016.

Under the terms of the Proposed Transaction, Toland will receive $42,447,669 for his Corindus options, $816,500 in severance payments and a one-time $2.5 million lump-sum cash transaction bonus.

11.    Defendant David W. Long ("Long") is, and has been at all relevant times, the Company's Senior Vice President and Chief Financial Officer. Under the terms of the Proposed Transaction, Long will receive $4,496,574 for his Corindus' options and $539,948 in severance payments.

12.    Defendant Douglas Teany ("Teany") is, and has been at all relevant times, the Company's Chief Operating Officer. Under the terms of the Proposed Transaction, Teany will receive $4,495,350 for his Corindus options.

13.    Defendant Jeffrey C. Lightcap ("Lightcap") is, and has been at all relevant times, a director and Chairman of the Board of the Company.

14.    Defendant Jeffrey G. Gold ("Gold") is, and has been at all relevant times, a director of the Company.

15.    Defendant Campbell D. Rogers, M.D., ("Rogers") is, and has been at all relevant times, a director of the Company.

16.    Defendant James R. Tobin ("Tobin") is, and has been at all relevant times, a director of the Company.

17.    Defendant Louis A. Cannon, M.D. ("Cannon") is, and has been at all relevant times, a director of the Company.

18.    Defendant Nathan R. Harrington ("Harrington") is, and has been at all relevant times, a director of the Company.

19.    Defendant Douglas L. Braunstein ("Braunstein") is, and has been at all relevant

times, a director of the Company.

20.    Defendants Lightcap, Toland, Gold, Rogers, Tobin, Cannon, Harrington, and Braunstein form the Board of Directors of Corindus ("Board") and, together with Defendants Teany and Long are collectively referred to herein as the "Individual Defendants" and together with Corindus as "Defendants." Each of the Individual Defendants at all relevant times had the power to control and direct Corindus to engage in the misconduct alleged herein.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Corindus (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of August 30, 2019, there were approximately 208,665,310 outstanding shares of Corindus common stock. The actual number of public shareholders of Corindus will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

ii)    whether the Individual Defendants have violated Section 20(a) of

the Exchange Act; and

      iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

## I.    Relevant Corporate Background

23.    Corindus is a developer of precision vascular robotics for use in interventional procedures. The Company's CorePath platform is the first FDA-cleared medical device to bring

robotic precision to percutaneous coronary and vascular procedures. CorPath GRX is the second-generation robotic-assisted technology offering enhancements to the platform by adding upgrades that increase precision, improve workflow, and extend the capabilities and range of procedures that can be performed robotically. The Company is focused on developing innovative robotic solutions to revolutionize treatment of emergent conditions by providing specialized and timely medical care to patients around the world.

24.     Siemens, a Delaware Corporation, is an indirect wholly owned subsidiary and primary U.S. operating subsidiary of Siemens Healthineers AG ("Healthineers"). Healthineers claims to enable and empower healthcare providers to expand precision medicine, transform care delivery, improve patient experiences, and digitalize healthcare. In that regard, Healthineers is constantly innovating its portfolio of products and services in its core areas of diagnostic and therapeutic imaging and in laboratory diagnostics and molecular medicine. In fiscal 2018, Healthineers generated revenue of €13.4 billion and adjusted profit of €2.3 billion.

## II.     Relevant Events Leading to the Merger Agreement and Proposed Transaction

25.     Corindus has historically focused its efforts in developing and utilizing robotic-assisted systems in percutaneous coronary procedures and, more recently, in peripheral vascular interventions. However, after achieving significant technical milestones with respect to tele-robotics in the Spring of 2018 and believing that these advancements, if further developed, would permit Corindus' robotic systems to be operated on a remote basis, in July 2018 Corindus' senior leadership established a committee of neurologists to advance the development of robotic treatment into neurovascular care, particularly procedures to treat ischemic stroke, which Corindus considered to be a market with significant potential. In light of the significant unmet need for fast ischemic stroke thrombectomy, Defendants believed a strategic collaboration with

an experienced medical device company or imaging system company could bring significant scale and synergies to accelerate and optimize the development of a remote robotic neurovascular solution.

26.    In August 2018, Corindus engaged Citi as its exclusive lead financial advisor to assist the Company in identifying and negotiating a strategic collaboration with a partner to assist Corindus with funding and jointly developing Corindus' next generation robotic-assisted system.

27.    Throughout the late summer of 2018 through late June 2019, Defendants sought to enter into a strategic collaboration to jointly develop and commercialize Corindus' next generation vascular robotic-assisted system for use in neuro-interventional and remote procedures.

28.    During this time period, on September 22, 2018, Corindus' CorPath GRX System was used in two live demonstrations of complex robotic-assisted percutaneous coronary interventions, which were broadcast to thousands of attendees at the Transcatheter Cardiovascular Therapeutics (TCT) 2018 Conference. In addition, the first live transmission of a remote robotic demonstration was streamed from the Mayo Clinic using CorPath GRX with developmental remote technology. One of the demonstrating physicians noted "[t]he robot's ability to precisely manipulate devices, specifically the controlled movement of the guide, is very impressive. Since incorporating robotics into my program, I've been able to reduce my time in lead by almost 40% which is especially valuable for the long, complex cases I perform." Defendant Toland commented, "[w]e are pleased that advanced vascular robotic technology and its role in complex interventions was a prevalent theme throughout the [TCT] conference."

29.    In October 2018, Defendant Toland and other senior leadership of the Company met with Healthineers to demonstrate the Company's robotic capabilities.

30.    From November 2018 to February 2019, Citi on behalf of Corindus, delivered a process letter for a strategic collaboration to seven potential partners that the Board believed were suitable. Corindus executed non-disclosure agreements and provided technology demonstrations and management presentations to multiple parties.

31.    On December 4-5, 2018, the Company's technology was used to conduct the first-in-human Telerobotic Intervention Study, the world's first percutaneous coronary intervention conducted from a remote location outside of the catherization lab. Five patients underwent the elective PCI procedure from a distance of roughly 20 miles away; each procedure was remotely performed by internationally acclaimed physician Dr. Tejas Patel, Chairman and Chief Interventional Cardiologist of the Apex Heart Institute.  Dr. Patel stated, "[t]he first-in-human cases of remote robotic PCI represent a landmark event for interventional medicine . . . [t]he application of telerobotics in India has the potential to impact a significant number of lives by providing access to care that may not otherwise have been possible. For the first time in cardiology's history, India will shine for this ground-breaking innovation, and I am honored to be a part of this historic occasion."

32.    In the spring of 2019, Healthineers and Koninklijke Philips N.V. ("Philips") both expressed interest in becoming Corindus' strategic collaboration partner.[2] However, in late March or early April 2019, Philips notified Corindus that it would not be submitting a partnership proposal at that time, but that it might be interested in a collaboration in the future. Thereafter, Corindus continued to actively discuss and negotiate the terms of a potential strategic collaboration with Healthineers.

33.    In May 2019, Corindus provided Healthineers and its legal counsel and advisors

---

[2]    As of February 2019, Philips beneficially owned approximately 12.8% of Corindus common stock and had been a significant investor of Corindus prior to the Company's 2015 initial public offering.

with access to an online data room for the purposes of conducting due diligence. Corindus also delivered to Healthineers drafts of the primary legal documents pertaining to the proposed strategic collaboration, including a draft Development Agreement with respect to the next generation robotic system, a draft Subscription Agreement, and a draft Stockholder Agreement.

34.    On May 22, 2019, Toland attended the EuroPCR Conference and met with Healthineers to further discuss the terms of the proposed collaboration. As part of the conference, an interventional cardiologist used Corindus' robotic-assisted system to successfully perform a live, complex robotic-assisted percutaneous coronary intervention, which was broadcast live to the conference attendees, including Toland and representatives of Healthineers. Dr. Jean Fajadet, the cardiologist who performed the procedure commented, "[t]he live case went exactly as planned. I was able to complete the procedure with control of all interventional devices and imaging equipment from the control room, providing my patient with high-quality care while protecting myself and the cath lab team. I am pleased to share this technology with my peers to demonstrate how far it has come, and the promising future it may provide patients."

35.    Thereafter, Healthineers and Corindus continued to negotiate the terms of the collaborative documents, and on or about June 13, 2019, the parties tentatively agreed, subject to agreement on other transaction issues, that Healthineers would make an upfront investment of approximately $90 million in common stock and/or preferred stock.

36.    However, on or about June 27, 2019, unable to agree on issues pertaining to ownership of intellectual property, exclusivity obligations, and the level of control that Healthineers sought with respect to the collaboration, the Board notified Healthineers that, while it continued to believe a collaboration was in the interest of both parties, the Board was unwilling to enter into the collaboration on the terms being proposed.

37.     No doubt concerned that they would lose their chance to be a part of a wildly profitable, ground-breaking advancement, just two days later, on June 29, 2019, Healthineers delivered to the Board a proposal to buy 100% of the outstanding shares of Corindus at a price per share of $3.65 in cash, subject to negotiation of transaction documents and the completion of due diligence.  Healthineers also requested a four-week exclusivity agreement with the Company with respect to the negotiation of a definitive transaction.

38.     On July 1, 2019, the Board held a telephonic special meeting to discuss Healthineers offer and exclusivity request and the risks attendant thereto, including the risk that Healthineers might no longer be interested in a strategic collaboration if a sale could not be negotiated and the possibility that Healthineers might withdraw its proposal if the Company reached out to other potential strategic parties regarding a sale. The Board determined that it was willing to consider the transaction with Healthineers, but that its offer did not appropriately value the Company's percutaneous coronary and peripheral vascular businesses and the potential of an oncology business.

39.     On July 3, 2019 Lightcap and Toland discussed with Healthineers representatives Corindus' potential in the percutaneous coronary, peripheral vascular, and oncology businesses, and also emphasized the potential substantial impact of incorporating Corindus' products into Healthineers' medical imaging suite sales.

40.     During the week of July 8, 2019, the Board instructed Corindus' senior leadership to prepare financial projections for 2019 through 2024. These projections were distributed to and approved by the Board on July 14, 2019 and subsequently shared with Healthineers. Notably, these projections differed from the preliminary financial information previously used in soliciting collaboration partners, and, despite the revolutionary success of the aforementioned

live demonstrations, were "risk-adjusted" in management's judgment to reflect difficulties of clearing regulatory hurdles and gaining market acceptance. Toland presented the projections to the Board. He would later receive a $2.5 million transaction bonus in connection with his work in furtherance of the Proposed Transaction.

41.    Also during the week of July 8, 2019, the Board continued to communicate and negotiate with Healthineers the terms of a definitive transaction and Healthineers increased its offer to $4.05 per share. Following further negotiations, on July 22, 2019, Healthineers submitted its "best and final" offer of $4.28 per share.

42.    On July 23, 2019, the Board held a telephonic special meeting to discuss Healthineers' offer and, fearing that Healthineers would withdraw its proposal if it was not granted exclusivity, the Board agreed to accept Healthineer's request for exclusivity. Moreover, because the Board was concerned that it would be unable to appropriately answer questions regarding the progress of its strategic collaboration discussions on its August 8, 2019 earnings call, the Board determined it was in the Company's best interest to negotiate the transaction documents promptly.

43.    The following day, on July 24, 2019, the Company notified Healthineers that it would enter an exclusivity agreement with Healthineers and proceed to finalize the merger.

44.    On August 7, 2019, the Board caused the Company to enter into the Merger Agreement, and the following day issued a press release announcing the Proposed Transaction, which stated, in relevant part:

### CORINDUS VASCULAR ROBOTICS ANNOUNCES DEFINITIVE AGREEMENT TO BE ACQUIRED BY SIEMENS HEALTHINEERS

**-- Corindus Stockholders to Receive $4.28 Per Share –**

**-- All-Cash Transaction Valued at Approximately $1.1 Billion –**

WALTHAM, MA, August 8, 2019 – Corindus Vascular Robotics (NYSE American: CVRS), a leading developer of precision vascular robotics, today announced that it has entered into a definitive merger agreement to be acquired by Siemens Healthineers AG. Under the terms of the merger agreement, Siemens Medical Solutions, a wholly-owned subsidiary of Siemens Healthineers AG, a German stock listed company, will acquire all issued and outstanding shares of common stock of Corindus for $4.28 per share in cash, representing an aggregate purchase price of approximately $1.1 billion.

"We are pleased to have reached this agreement with Siemens Healthineers," said Mark J. Toland, President and Chief Executive Officer of Corindus. "We believe the transaction will deliver immediate, compelling and certain value to all Corindus stockholders, as well as substantial benefits to our customers. The combination of Siemens Healthineers' advanced, high-quality imaging, digital and artificial intelligence tools with Corindus' precision robotics platform has the potential to transform the way healthcare is delivered to those suffering from cardiovascular or peripheral disease. The tremendous technology synergies and shared vision between both companies should allow us to achieve a seamless integration between our businesses."

"Corindus has established a leading position in vascular robotics with a compelling technology platform for robotic-assisted coronary, peripheral, and neurovascular procedures," said Michel Therin, President, Advanced Therapies at Siemens Healthineers. "The acquisition of Corindus, combined with Siemens' strong advanced therapies portfolio will help further advance the growth of vascular robotics. The integration of our technologies could lead to reduced variability, improved efficiency, expanded access to care, and ultimately improved patient outcomes. We look forward to welcoming the Corindus team to Siemens Healthineers."

The transaction has been approved by the Board of Directors of Corindus and is expected to close in the fourth quarter of 2019, subject to approval by Corindus stockholders, the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the satisfaction of other customary closing conditions.

In connection with the transaction, Citigroup Global Markets Inc. is acting as exclusive financial advisor to Corindus and Cadwalader, Wickersham & Taft LLP is serving as its legal advisor.

45.     On August 7, 2019, the Board also approved a transaction bonus award in the amount of $2.5 million for Defendant Toland, "to recognize Mr. Toland's performance prior to

and during the merger agreement process."

### III.    The Materially Incomplete and Misleading Proxy

46.     On September 26, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction and discloses the bases on which the Board relied to recommend and solicit votes in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

47.     *First*, the Proxy fails to disclose sufficient information regarding the financial projections for the Company, despite the fact that these projections were reviewed and relied upon by Company management and its financial advisor, Citi, in assessing whether the Proposed Transaction was "fair" and in the best interests of Corindus and its shareholders. More specifically, the Proxy fails to disclose the Company's projected free cash flows and underlying line items. This is especially egregious in light of the facts that (a) Citi specifically relied on the free cash flow projections in its *Discounted Cash Flow Analysis* and (b) the Company's projections disclose massive increases in Revenue and Gross Profit from 2019 to 2024:

| Line Item | Historical (in millions) | | | | Projected[(1)] (in millions) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
| Revenue | $3 | $10 | $11 | $20 | $80 | $126 | $244 | $360 | $450 |
| Gross Profit / (Loss) | ($2) | $0 | $2 | $9 | $48 | $79 | $168 | $252 | $328 |
| Operating Income / (Loss) | ($32) | ($34) | ($34) | ($38) | ($23) | ($12) | $29 | $90 | $142 |

48.     Simply put, management projections are clearly material to stockholders when

deciding whether to vote for a merger. This is especially so where, as here, such projections are necessary for shareholders to assess the value of the consideration they have been offered in exchange for their stake in Corindus. The complete omission of these projections renders the statements throughout the Proxy that the Merger Consideration is "fair" to the Company's shareholders incomplete and misleading.

49.    *Second*, the Proxy omits material information concerning regarding Citi's financial analysis – specifically the individual multiples and observed low, high, and mean metrics for Citi's *Selected Companies Analysis* and *Selected Transactions Analysis*, as well as the individual inputs and assumptions underlying Citi's application of perpetuity growth rates ranging from 5.0% to 6.0% and discount rates ranging from 10.9% to 13.0% in Citi's *Discounted Cash Flow Analysis.*

50.    In light of the Company's ground-breaking and revolutionary advancements in tele-robotic healthcare solutions and its original pursuit to engage a strategic collaboration while remaining a stand-alone company, and Healthineers' corresponding desire to acquire the Company outright, nothing is more important to shareholders being asked to vote on the Proposed Transaction than the likely standalone value of the Company going forward.  This is all the more true in light of the facts that approximately $52.8 million is being paid in severance payments and/or to cash out executive officers' outstanding stock options as a result of the Proposed Transaction and Toland, Corindus' President and CEO who delivered the financial projections to the Board, is receiving an additional $2.5 million transaction bonus in connection with the Proposed Transaction.

51.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent

disclosure of the foregoing material information prior to the special shareholder meeting to vote

on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make

a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and

they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against**
**Corindus and the Individual Defendants for Violations of Section 14(a)**
**of the Securities Exchange Act of 1934 and Rule 14a-9 Promulgated Thereunder**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

53.     Defendants have issued the Proxy with the intention of soliciting stockholder

support for the Proposed Transaction. Each of the Defendants reviewed and/or authorized the

dissemination of the Proxy, which fails to provide critical information regarding, among other

things, the process that led to the Proposed Transaction and projections relied upon by Citi and

the Board in deciding that the Proposed Transaction was fair.

54.     In so doing, Defendants made untrue statements of fact and omitted state material

facts necessary to make the statements made not misleading. Each of the Individual Defendants,

by virtue of their roles as officers and/or directors, were aware of the omitted information but

failed to disclose such information, in violation of Section 14(a).

55.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of

the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any
> 14D9 statement, form of 14D9, notice of meeting or other communication,
> written or oral, containing any statement which, at the time and in light of
> the circumstances under which it is made, is false or misleading with
> respect to any material fact, or which omits to state any material fact
> necessary in order to make the statements therein not false or misleading or

necessary to correct any statement in any earlier communication with respect to the solicitation of a 14D9 for the same meeting or subject matter which has become false or misleading.

56.    During the relevant period, Defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57.    Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning certain material information regarding the projections and analyses used by Citi and the Board in deciding that the Proposed Transaction was in the best interests of the Company and its shareholders.

58.    Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board, Corindus management, and Citi all reviewed and assessed the financial projections, and further states that the Board considered the fairness opinion provided by Citi and the assumptions made and matters considered in connection therewith, which included financial projections for the Company. In addition, the individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

59.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

60.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

61.     Unless Defendants are enjoined by the Court, they will continue to breach their duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

62.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

### COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Violations of Section 20(a) of the Securities Exchange Act of 1934**

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of Corindus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Corindus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are false and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

67.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

70.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Directing Defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

September __, 2019                    Respectfully submitted,

                                      **MONTEVERDE & ASSOCIATES PC**


                                      /s/ Juan E. Monteverde
                                      Juan Monteverde (JM-8169)
                                      Miles D. Schreiner (MS-2518)
                                      The Empire State Building 350 Fifth
                                      Avenue, Suit 4405 New York, NY 10118
                                      Tel: (212) 971-1341
                                      Fax: (212) 202-7880Email:
                                      mschreiner@monteverdelaw.com

                                      *Attorneys for Plaintiff*

**OF COUNSEL:**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina, Esq.
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Tel.: (504) 455-1400
Fax: (504) 455-1498
E-mail: Michael.Palestina@ksfcounsel.com


*Attorneys for Plaintiff*